UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------**X**

TYLEEHA CARTER,

**FIRST AMENDED COMPLAINT**

Plaintiff,

Demand for Trial by Jury

v.

ECF CASE
Docket No.

CITY OF NEW YORK, Individually and officially in
their official capacities as New York City police
officers, NELSON PROANO, BORIS MIRKIN,
AWAIS MAZHAR, JUAN PEREZ, JOSE
HERNANDEZ and JOHN or JANE DOE 1-10,

Defendants.
-------------------------------------------------------------------**X**

Plaintiff, Tyleeha Carter, by and through the undersigned attorneys, Sim & DePaola,

LLP, for her complaint against the Defendants, City of New York, Nelson Proano, Boris Mirkin,

Awais Mazhar, Juan Perez, Jose Hernandez and John or Jane Doe 1-10, individually and in their

official capacities as New York City police officers, alleges and states as follows:

**PRELIMINARY STATEMENT**

1.      This is a civil rights action in which Plaintiff seeks relief through 42 U.S.C. §§ 1981,

1983, 1985, 1986 and 1988 for the violations of her civil rights protected by Constitution of the

United States and the Constitution and laws of the State of New York.

2.      Ms. Carter's claims arise from a March 15, 2018 incident, in which defendants, acting

under color of state law, arrested, detained, assaulted and battered Ms. Carter. As a result, Ms.

Carter was deprived of her liberty and suffered serious physical and psychological injuries.

3.      Plaintiff seeks monetary damages (compensatory and punitive) against Defendants, as well as an award of costs and attorneys' fees, and such other and further relief as the Court deems just and proper.

## JURISDICTION

4.      This action arises under the Fourth and Fourteenth Amendments to the United States Constitution and under 42 U.S.C. §§ 1983, 1985, 1986 and 1988 and the Laws Constitution of the State of New York.

5.      The jurisdiction of this court is predicated upon 28 U.S.C. §§ 1331, 1343(a)(3) and (4), 1367(a) and the doctrine of supplemental jurisdiction.

## VENUE

6.      Venue is laid within the Southern District of New York in that Defendant, City of New York, is located within and a substantial part of the events giving rise to the claim occurred within the boundaries of the Southern District. 28 U.S.C. § 1391 (b) and (c).

## PARTIES

7.      Plaintiff, Tyleeha Carter ("Ms. Carter"), is a Black or African-American female, who resides in Bronx County, within the City and State of New York.

8.      Defendant, City of New York ("City") is a municipal corporation organized under the laws of the State of New York.

9.      At all times relevant hereto, Defendant City, acting through the New York City Police Department ("NYPD") was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, training, supervision, discipline and retention and conduct of all NYPD personnel, including corrections officers,

police officers, detectives and supervisory officers as well as the individually named Defendants herein.

10.     In addition, at all times here relevant, Defendant City was responsible for enforcing the rules of the NYPD and for ensuring that the NYPD personnel obey the laws of the United States and the State of New York.

11.     Defendant, Nelson Proano ("Proano"), was, at all times here relevant, a police officer employed by the NYPD and as such was acting in the capacity of an agent, servant and employee of the City of New York.  Defendant Proano was, at the times relevant herein, a Police Officer under Shield #9423, Tax ID #948530 in the 28th Precinct, located at 2271-89 Frederick Douglass Blvd, New York, NY 10027. Defendant Proano is being sued in his individual and official capacities.

12.     Defendants, Boris Mirkin (Mirkin), Awais Mazhar (Mazhar), Juan Perez (Perez) and Jose Hernandez (Hernandez) were, at all times here relevant, police officers or police sergeants employed by the NYPD and, as such, were acting in the capacity as agents, servants, and employees of the City of New York. Defendants Mirkin, Mazhar and Perez were, at the times here relevant, assigned to the 28th NYPD Precinct, Transit District 30, the Manhattan Court Section or NYPD Command 579. Defendants Mirkin, Mazhar, Hernandez and Perez are being sued in their individual and official capacities.

13.     At all times relevant herein, Defendants John or Jane Doe 1 through 10 were police officers, detectives, supervisors, policymakers and/or officials employed by the NYPD.  At this time, Plaintiff does not know the true names and/or tax registry numbers of Defendants John or Jane Doe 1 through 10, as such knowledge is within the exclusive possession of defendants.

14.     At all times relevant herein, Defendants John or Jane Doe 1 through 10 were acting as agents, servants and employees of the City of New York and the NYPD.  Defendants John or Jane Doe 1 through 10 are being sued in their individual and official capacities.

15.     At all times here mentioned, Defendants were acting under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the City and State of New York.

16.     Plaintiff's Notice of Claim was deemed timely served, *nunc pro tunc*, by the Hon. Alexander M. Tisch.

17.     Over 30 days have elapsed since the filing of those notices, and this matter has not been settled or otherwise disposed of.

18.     Plaintiff has complied with municipal defendant's request for an oral examination pursuant to Section 50-H of the New York General Municipal Law.

19.     This action has been commenced within one year and ninety days from the relevant accrual dates.

## **FACTUAL CHARGES**

20.     On, or about, March 15, 2018, at approximately 1:00 p.m., Ms. Carter was inside the Modell's Sporting Goods store, located at 300 W 125th St, New York, NY 10027.

21.     Ms. Carter was in the Modell's Sporting Goods store to purchase a sweater.

22.     Ms. Carter was unlawfully stopped by a Modell's loss prevention officer.

23.     Ms. Carter was committing no crimes or violations of the law on March 15, 2018.

24.     Defendants, including Proano, arrived at the Modell's Sporting Goods store, and placed handcuffs on Ms. Carter without a legal reason to do so.

25.     Defendants, including Proano and Hernandez, did not have reasonable suspicion or probable cause to stop, question, frisk, search or seize Ms. Carter.

26.     Defendants, including Proano and Hernandez, were not in possession of any evidence supporting the presence of probable cause to arrest or detain Ms. Carter.

27.     Defendants, including Proano and Hernandez, refused to view the store surveillance video, despite it being readily accessible to them and able to conclusively prove Ms. Carter's innocence.

28.     Defendants, including Proano and Hernandez, failed to conduct even a cursory investigation prior ro placing Ms. Carter under arrest.

29.     Defendants, including Proano and Hernandez, never observed Ms. Carter commit any crimes or violations of the law.

30.     Defendants, including Proano and Hernandez, arrested and gave unwarranted credence to the loss prevention officer's version of events, solely because of Ms. Carter's status as a young, twenty-eight-year-old, Black female.

31.     Defendants, including Proano and Hernandez, then transported Ms. Carter to the 28th precinct.

32.     Defendants, including Proano and Hernandez, illegally searched Ms. Carter's person without probable cause.

33.     Defendant Proano was Ms. Carter's arresting officer and signed the spurious criminal complaint against her.

34.     On March 15, 2018, at approximately 7:00 p.m., Defendants, including Proano and Hernandez, transported Ms. Carter to Manhattan Central Booking.

35.     At central booking, Ms. Carter was within the custody of Defendants, including Proano, Hernandez, Mirkin, Mazhar and Perez, who detained with her an all-male population.

36.     Defendants, including Proano, Hernandez, Mirkin, Mazhar and Perez, then lined Ms. Carter up against the wall with all male detainees.

37.     As Ms. Carter was lined up against the wall, she began to feel ill.

38.     Ms. Carter then requested medical attention in the presence of Defendants, including Proano, Hernandez, Mirkin, Mazhar and Perez.

39.     Defendants, including Proano, Hernandez, Mirkin, Mazhar and Perez, repeatedly denied Ms. Carter medical attention, despite each being fully aware that she was a four-month high risk pregnancy.

40.     After Ms. Carter requested medical attention due to her delicate condition, Defendant, Proano or Perez, became exceedingly and visibly irate with Ms. Carter.

41.     Defendant, Proano or Perez, repeatedly yelled at Ms. Carter to "shut up" and "stop complaining."

42.     Defendants, including Proano, Hernandez, Mirkin, Mazhar and Perez, sadistically forced to Ms. Carter to remain standing against the wall for over an hour, all while she was complaining of painful symptoms due to her pregnancy.

43.     During said hour, Defendants, including Proano, Hernandez, Mirkin, Mazhar and Perez, each ignored Ms. Carter's complaints and requests for medical attention or yelled at her to "shut up."

44.     After said hour, Ms. Carter was eventually permitted to sit on a chair by defendants.

45.     Shortly after being seated, defendant, Proano or Perez, in the immediate presence of Defendants, including Hernandez, Mirkin and Mazhar, approached Ms. Carter and aggressively

yanked her out of the chair by the metal chain linking her two handcuffs, which caused Ms. Carter to sustain immense pain and suffering.

46.    Defendant, Proano or Perez, proceeded to mercilessly drag Ms. Carter by the connecting metal chain, while simultaneously applying an overly excessive amount of physical pressure to her hands and wrists.

47.    Ms. Carter frantically pleaded with Defendant, Proano or Perez, to stop, all to no avail.

48.    Ms. Carter began to cry due to the immeasurable pain and agony, which served only to exacerbate her tormentor's animosity toward her.

49.    Ms. Carter again pleaded with defendant, Proano or Perez, to stop hurting her so badly, as she had done nothing to defendant, is female and carrying an unborn child.

50.    Defendant, Proano or Perez, still in the immediate presence of Defendants, Mirkin and Mazhar, proceeded to yell racially and sexually derisive remarks at Ms. Carter.

51.    Defendant, Proano or Perez, then described various sexual acts that defendant would be performing while Ms. Carter remained incarcerated.

52.    Defendant, Proano or Perez, repeatedly directed racial and sexual insults towards Ms. Carter that were incredibly insensitive, racist, sexist, emotionally hurtful, derogatory and unwarranted.

53.    Ms. Carter eventually learned that the cause of Defendants, including Proano, Hernandez, Mirkin, Mazhar and Perez, ire, was her mere presence, particularly her prior requests for immediate medical attention and her status as a pregnant Black female.

54.    Defendants, including Proano, Hernandez, Mirkin, Mazhar and Perez, berated Ms. Carter, because they attributed their overtime work assignments to her requests for medical attention.

55.     En route to the medical treatment center, defendant Proano or Perez, tightened Ms. Carter's handcuffs in an unreasonably tight fashion, which immediately caused her hands and wrists to swell around the metal, nearly enveloping them completely.

56.     Ms. Carter then shrieked in agony due to the pain.

57.     In response Defendant, Proano or Perez, proceeded to drag Ms. Carter by connective center link of her handcuffs, rendering her near unconscious due to the pain and suffering.

58.     Ms. Carter then desperately implored defendant, Proano or Perez, to cease his sadistic behavior, again to no avail.

59.     Defendant, Proano or Perez, eventually responded to Ms. Carter's pleas for mercy in the form of racist and sexist utterances.

60.     Defendant, Proano or Perez, proceeded to infuse his derogatory remarks with a racially and sexually motivated animus.

61.     Defendant, Proano or Perez, repeatedly insulted Ms. Carter's socioeconomic status, race and sex, referring to Ms. Carter as a "broke Black bitch" countless times.

62.     Defendant, Proano or Perez, then inexplicably decided to taunt Ms. Carter by detailing various sexual acts he intended to perform on other men, while Ms. Carter would remain detained.

63.     Defendant's, Proano's or Perez,' conduct was so extreme and outrageous that nearby male prisoners began to shout and yell in a concerted effort to render aid to Ms. Carter and prevent any further egregious misconduct by Defendant, Proano or Perez.

64.     Defendants, including Mirkin, Hernandez and Mazhar, were present and in the immediate vicinity of Ms. Carter and Defendant, Proano or Perez, for the duration of the aforesaid reprehensible conduct, yet did nothing, except laugh and observe.

65.     Due to the severe injuries that Ms. Carter sustained to her hands and wrists from Defendant, Proano or Perez, she was immediately transported to Bellevue Medical Center, where she received further treatment.

66.     Defendant, Proano or Perez, accompanied Ms. Carter to Bellevue, where he continued his verbal assault against her, berating her as, *inter alia*, "a dirty black bitch, whore."

67.     Defendants, including Hernandez, Mirkin and Mazhar, witnessed all of this, yet failed to intervene in any form or manner, even after Ms. Carter begged them to imagine someone treating their daughters or wives as Ms. Carter was being treated.

68.     Ms. Carter eventually received the diagnosis that her hand was fractured and was involuntarily returned to Manhattan Central Booking.

69.     Upon arrival at Central Booking, Ms. Carter was immediately queued up for arraignment due to her injuries and pregnancy condition.

70.     Ms. Carter was then unceremoniously presented with two incredibly unappealing options—plead guilty to crime she did not commit, with no need to return, or defend her innocence, vis-à-vis an indeterminable amount of mandatory return appearances to the scene of her torment.

71.     Ms. Carter chose the former.

72.     Ms. Carter was the only female prisoner present during her interactions with Defendants, including Proano, Hernandez, Mirkin, Mazhar and Perez, as the other prisoners were all male.

73.     Ms. Carter was subjected to the aforementioned verbal abuse and use of excessive force due solely to her race, color, ethnicity, disability or sex.

74.     Defendant's, Proano's or Perez,' intentional, extreme and outrageous conduct towards Ms. Carter caused her to suffer severe emotional distress, believed to be permanent.

75.    Defendants have displayed a pattern and practice of using excessive force against defenseless individuals, who have been rear-handcuffed and within the custody of police officers, such as Ms. Carter.

76.    During all of the events described, the Defendants, including Proano, Hernandez, Mirkin, Mazhar and Perez, acted maliciously, outrageously and with intent to injure Plaintiff.

77.    At all times relevant hereto, Defendants, including Proano, Hernandez, Mirkin, Mazhar and Perez, were involved in the process of using excessive force against Plaintiff or failed to intervene when they observed others physically contacting Plaintiff with excessive force.

78.    The NYPD has a longstanding and ignominious record of failing to discipline its officers, or even entertaining allegations of wrongdoing against them. On June 26, 2019, *The New York Times* published an article, entitled "2,495 Reports of Police Bias. Not One Was Deemed Valid by the N.Y.P.D." This article reported that within the last five (5) years, almost 2,500 separate individuals have filed formal complaints with the NYPD alleging that an officer acted with bias toward them, with not a single one being substantiated by the NYPD. Such a finding is plainly incredible and obviously the result of deliberately poor or nonexistent investigatory protocols. The report further impugned the NYPD's commitment to combat the prejudices and the biases exhibited by many of its officers.

79.    Countless articles and reports have been published about the NYPD's systemic problems, ranging from the rampant use of excessive force to biased policing and its own obvious failure to adequately police itself. *The Washington Post* published an article, entitled "What else is the NYPD hiding?," written by Radley Balko on March 28, 2019, detailing the incredible lack of transparency regarding allegations of misconduct against NYPD officers and the overwhelming absence of any corrective measures or discipline. The website, *Politico*, posted an article on

August 15, 2019, entitled "Under Increased Scrutiny, NYPD Faces Bias Complaints from Muslim New Yorkers." Unsurprisingly, this posting described various instances, in which NYPD officers were alleged to have employed the use of excessive force against protected classes. Lastly, *The New York Daily News*, on June 17, 2019, published an article written by Rocco Parascandola describing how a federal judge, Hon. Raymond Dearie, "lambasted the NYPD for accepting repeated denials from a detective accused of misconduct and City lawyers for standing behind flimsy internal investigations." The article further highlighted the exceedingly poor quality of the NYPD's internal investigations, a problem that is only compounded by the NYPD's fierce privacy protocols, regarding its officers' personnel files.

80.    Upon information and belief, the NYPD, the City of New York, and their respective policymakers, officials or supervisors have imposed, tacitly approved or acquiesced to policies, customs, or patterns and practices within the NYPD that resulted in plaintiff's subjection to excessive force.

81.    Upon information and belief, the NYPD, the City of New York, and their respective policymakers or supervisors have failed to provide adequate training regarding the identification of the appropriate amount of force to be used.

82.    Defendants' actions, pursuant to plaintiff's cruel and inhuman detainment, were so blatantly violative of plaintiff's civil rights that the tacit approval of identical or similar acts by the policymakers or supervisors of the NYPD and the City of New York, as well as their deliberate indifference towards the rights of any individuals who may come into contact with defendants, should be inferred, because such flagrant deprivations of constitutionally protected rights could not and would not occur without the tacit approval or deliberate indifference

regarding the commission of such violations by the policymakers or supervisors of the NYPD and City of New York.

83.     Upon information and belief, further details and facts, relating to the unlawful policies, customs or patterns and practices of the NYPD, City of New York and their respective policymakers, supervisors, police officers or employees, will become known after the completion of discovery, as such information is presently within the exclusive possession of defendants, the NYPD and City of New York.

84.     Upon information and belief, the personnel files, records and disciplinary histories of the officer defendants will reveal a history of Constitutional violations indicative of defendant City's knowledge that the individual officer defendants were unfit for employment as NYPD officers, or for employment in general, and that the probability of the individually named defendants committing similar violations in the future was extremely high.

85.     Upon information and belief, said personnel files, records and disciplinary histories will conclusively show that the City and the NYPD were fully aware of defendants' past constitutional violations, the unacceptably high probability for the recurrence of similar transgressions, the unreasonably dangerous situations that were likely to result from their hiring or retention, as well as their unsuitability for employment as law enforcement officers, or for employment in general, and that the NYPD and City of New York failed to engage in any preventive or corrective action intended to diminish the likelihood of recurrence for such violations, which is tantamount to the City's tacit approval of such misconduct or the City's deliberate indifference towards the civil rights of those who may interact with its employees, including the individual named defendants herein.

86.     Defendant City continued to permit defendant Mazhar to interact with defenseless individuals, such as plaintiff, despite finding him guilty after an interdepartmental hearing of threatening an individual, for which he was suspended for a total of (30) days.

87.     Defendant City continued to place defendant Proano in positions where he would be able to inflict substantial harm, despite being fully aware of his alarming tendency to apply excessive force against undeserving individuals.

88.     As a direct and proximate result of the acts of Defendants, Plaintiff suffered the following injuries and damages: violations of her rights pursuant to the Fourth and Fourteenth Amendment of the United States Constitution, violations of New York State law, physical injury, physical pain and suffering, emotional trauma and suffering, including fear, embarrassment, humiliation, emotional distress, frustration, extreme inconvenience, anxiety, loss of liberty and harm to reputation.

## FIRST CAUSE OF ACTION
Assault and Battery Under
New York State Law

89.     Plaintiff re-alleges and re-avers Paragraphs 1 through 87 of this Complaint as if fully set forth herein.

90.     Defendants made plaintiff fear for her physical well-being and safety and placed her in apprehension of immediate harmful or offensive touching.

91.     Defendants engaged in and subjected plaintiff to immediate harmful and/or offensive touching and battered her without consent.

92.     Defendant City, as employer of the individual Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

93.     As a direct and proximate result of this breach, Plaintiff sustained the damages hereinbefore alleged.

## SECOND CAUSE OF ACTION
Excessive Force Under
42 U.S.C. § 1983 Against Individual Defendants

94.     Plaintiff re-alleges and re-avers Paragraphs 1 through 87 of this Complaint as if fully set forth herein.

95.     The Defendants violated Plaintiff's rights under the Fourth and Fourteenth Amendments, because they used unreasonable force without Plaintiff's consent.

96.     Defendants engaged in and subjected Plaintiff to immediate harmful or offensive touching and battered her without her consent.

97.     As a direct and proximate result of this breach, Plaintiff sustained the damages hereinbefore alleged.

## THIRD CAUSE OF ACTION
Intentional Infliction of Emotional Distress
New York State Law

98.     Plaintiff re-alleges and re-avers Paragraphs 1 through 87 of this Complaint as if fully set forth herein.

99.     The conduct of Defendants was extreme and outrageous.

100.    Defendants' extreme and outrageous conduct was perpetrated with the intent to cause, or with disregard to a substantial probability of causing, severe emotional distress to Plaintiff.

101.    Defendants' extreme and outrageous conduct is causally related to Plaintiff's injuries.

102.    Defendants' extreme and outrageous conduct caused Plaintiff to sustain extreme emotional distress.

103.    Defendant City, as employer of the individual Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

104.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## FOURTH CAUSE OF ACTION
Failure to Intervene Under
New York State Law

105.    Plaintiff re-alleges and re-avers Paragraphs 1 through 87 of this Complaint as if fully set forth herein.

106.    Those Defendants that were present but did not actively participate in the aforementioned unlawful conduct, observed such conduct, had an opportunity to prevent such conduct, had a duty to intervene and prevent such conduct and failed to intervene.

107.    Defendant City, as employer of the individual Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

108.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## FIFTH CAUSE OF ACTION
Failure to Intervene Under
42 U.S.C. § 1983 Against Individual Defendants

109.    Plaintiff re-alleges and re-avers Paragraphs 1 through 87 of this Complaint as if fully set forth herein.

110.    Those Defendants that were present but did not actively participate in the aforementioned unlawful conduct observed such conduct, had an opportunity to prevent such conduct, had a duty to intervene and prevent such conduct and failed to intervene.

111.    Accordingly, the Defendants who failed to intervene violated the Fourth and Fourteenth Amendments.

112.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

113.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## SIXTH CAUSE OF ACTION
Violations of Rights under
Americans with Disabilities Act Against the City of New York and All other Defendants in their Official Capacities

114.    Plaintiff re-alleges and re-avers Paragraph 1 through 87 of this Complaint as if fully set forth herein.

115.    Plaintiff's high-risk pregnancy constituted a disability under the Americans with Disabilities Act (ADA).

116.    Defendants intentionally discriminated against Plaintiff on the basis of her disability.

117.    Defendants also selectively treated Plaintiff in comparison to others similarly situated.

118.    Defendants' selective treatment of Plaintiff was based on impermissible considerations regarding Plaintiff's disability.

119.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## SEVENTH CAUSE OF ACTION
Deprivation of Rights and Denial of Equal Protection of the Laws under
New York State law

120.    Plaintiff re-alleges and re-avers Paragraph 1 through 87 of this Complaint as if fully set forth herein.

121.    Plaintiff is a Black female and member of a protected class.

122.    Plaintiff was disabled during all relevant times alleged.

123.    Defendants intentionally discriminated against Plaintiff on the basis of her race, disability, or sex.

124.    Defendants also engaged in the selective treatment of Plaintiff, in comparison to others similarly situated.

125.    Defendants' selective treatment of Plaintiff was based on impermissible considerations, such as race, disability, sex, an intent to inhibit or punish Plaintiff's exertion of her Constitutional rights, or a malicious or bad faith intent to injure Plaintiff.

126.    Defendants applied facially neutral laws against Plaintiff in a discriminatory manner.

127.    Defendants, motivated by discriminatory animus, applied facially neutral statutes with adverse effects against Plaintiff.

128.    Defendants did not possess a rational basis, excuse or justification for applying any laws or statutes against Plaintiff.

129.    Accordingly, defendants violated Plaintiff's Constitutionally protected rights, pursuant to the Fourteenth Amendment to the United States Constitution and Article I, Section 11, the New York State Constitution, as well as Article VII, Section 79-n, of the New York State Civil Rights Law and the New York State Human Rights Law.

130.    Defendant City, as employer of the individual Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

131.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## EIGHTH CAUSE OF ACTION
Deprivation of Rights and Denial of Equal Protection of the Laws under
42 U.S.C. §§ 1981 and 1983 Against Individual Defendants

132.    Plaintiff re-alleges and re-avers Paragraph 1 through 87 of this Complaint as if fully set forth herein.

133.    Plaintiff is a Black female and member of a protected class.

134.    Defendants discriminated against Plaintiff on the basis of her race.

135.    Defendants also selectively treated Plaintiff in comparison to others similarly situated.

136.    Defendants' selective treatment of Plaintiff was based on impermissible considerations, such as race, an intent to inhibit or punish Plaintiff's exertion of her Constitutional rights, or a malicious or bad faith intent to injure Plaintiff.

137.    Defendants applied facially neutral laws against Plaintiff in a discriminatory manner.

138.    Defendants, motivated by a discriminatory animus, applied facially neutral penal statutes with adverse effects against Plaintiff.

139.    Defendants did not possess a rational basis, excuse or justification for applying any laws or statutes against Plaintiff.

140.    Accordingly, defendants violated Plaintiff's Constitutionally protected rights, pursuant to the Fourteenth Amendment to the United States Constitution and Article I, Section 11, the New York State Constitution, as well as Article VII, Section 79-n, of the New York State Civil Rights Law.

141.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

### NINTH CAUSE OF ACTION
Conspiracy to Interfere with Civil Rights and Failure to Prevent the Conspiracy under
42 U.S.C. §§ 1983, 1985 and 1986 Against Individual Defendants

142.    Plaintiff re-alleges and re-avers Paragraph 1 through 87 of this Complaint as if fully set forth herein.

143.    Defendants engaged in a conspiracy against Plaintiff to deprive Plaintiff of her rights to engage in protected speech or activities, to be free from unreasonable searches and seizures, to be afforded a fair trial, to not be deprived of her liberty or property without due process of law, to the equal protection of the laws, or of the privileges and immunities under the laws and constitutions of the United States and of the State of New York.

144.    Defendants committed overt acts in furtherance of their conspiracy against Plaintiff.

145.    As a result, Plaintiff sustained injuries to her person, was deprived of her liberty or deprived of rights or privileges of citizens of the United States.

146.    Defendants' conspiracy was motivated by a desire to inhibit or punish Plaintiff for exercising her constitutional rights, or because of some racial, otherwise class-based, invidious or discriminatory animus.

147.    The Defendants that did not engage or participate in the conspiracy to interfere with Plaintiff's civil rights, had knowledge that acts in furtherance of the conspiracy were about to be committed or in process of being committed, possessed the power to prevent or aid in the prevention of the conspiratorial objective, and neglected to do so.

148.    Accordingly, defendants violated Plaintiff's rights, pursuant to the Fourth and Fourteenth Amendments to the United States Constitution.

149.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

**<u>TENTH CAUSE OF ACTION</u>**
Negligent Hiring, Training, Retention and Supervision Under
New York State Law

150.    Plaintiff re-alleges and re-avers Paragraph 1 through 87 of this Complaint as if fully set forth herein.

151.    Defendant City owed a duty of care to Plaintiff to adequately hire, train, retain and supervise its employee defendants.

152.    Defendant City breached those duties of care.

153.    Defendant City placed defendants in a position where they could inflict foreseeable harm.

154.    Defendant City knew or should have known of its employee defendants' propensity for violating the individual rights granted under the United States Constitution and the laws of the State of New York, prior to the injuries incurred by Plaintiff.

155.    Defendant City failed to take reasonable measures in hiring, training, retaining and supervising its employee defendants that would have prevented the aforesaid injuries to Plaintiff.

156.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## ELEVENTH CAUSE OF ACTION
Municipal "*Monell*" Liability Under
42 U.S.C. § 1983 Against Defendant City

157.    Plaintiff re-alleges and re-avers Paragraph 1 through 87 of this Complaint as if fully set forth herein.

158.    Defendant City maintained a policy or custom that caused Plaintiff to be deprived of his civil rights, tacitly approved of such violative conduct or was deliberately indifferent toward the potential exposure of individuals, such as plaintiff, to such violative behavior.

159.    Defendant City's employee police officers have engaged in an illegal pattern and practice of misconduct, so consistent and widespread that it constitutes a custom or usage, of which a supervisor or policymaker must have been aware of.

160.    Defendant City, its policymakers and supervisors failed to provide adequate training or supervision to their subordinates, to such an extent that is tantamount to the City's deliberate

indifference toward the rights of those who may come into contact with defendant City's employees.

161.   Defendant City's employees engaged in such egregious and flagrant violations of plaintiff's Constitutional rights that the need for enhanced training or supervision is obvious and equates to a display of deliberate indifference by defendant City and its policymakers toward the rights of individuals, who may come into contact with defendant City's employees.

162.   Defendant City's repeated refusal or failure to install or apply corrective or preventive measures constitutes the tacit approval of such violative behavior or a deliberate indifference to the rights of those who may be affected by such behavior.

163.   Defendant City's conduct caused the violation of plaintiff's civil rights enumerated within the Constitution of the United States.

164.   As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendants, jointly and severally, as follows:

a)      In favor of Plaintiff in an amount to be determined by a jury for each of Plaintiff's causes of action;

b)      Awarding Plaintiff punitive damages in an amount to be determined by a jury;

c)      Awarding Plaintiff compensatory damages in an amount to be determined by a jury;

d)      Awarding Plaintiff reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

**e)**      Granting such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: October 23, 2019

Respectfully submitted,

_/s/ Samuel C. DePaola____
Samuel C. DePaola, Esq.
Bar Number: SD0622
Sim & DePaola, LLP
*Attorneys for Ms. Carter*
4240 Bell Blvd, Suite 201
Bayside, NY 11361
T: (718) 281-0400
F: (718) 631-2700
sdepaola@simdepaola.com